## HAMLIN *v.* DAVIS *et al.*

### (*Circuit Court of Cook County, Illinois.*)

EMPLOYER AND EMPLOYEE—CONFIDENTIAL RELATIONS—LEASE BY SERVANT. An employee cannot, while in the service of his employer, acquire any rights or become interested in any matter antagonistic to his employer's interest. So, a party holding the relation of agent or servant to another, having by this means come into knowledge of the value of a lease held by his employer, will not be permitted to procure a renewal of such lease for his own benefit, and against the interest of his employer.

TULEY, J.

This is a bill filed by complainant against the defendant Davis, seeking to have the latter declared a trustee of a ten-years lease of the Grand Opera House, executed to Davis by defendant Borden, in which lease the defendant Borden is claimed to have some interest, subject, however, to complainant's equity to have the lease assigned over to him. The substantial facts are, that complainant, after some ten years' labor and the expenditure of over $75,000 in money, had succeeded in making the property in question a first-class theater and a good paying business. In the August of 1880 he took into his employ the defendant Davis as his confidential general business manager. Complainant had a lease of the theater from the defendant, Borden, which would expire in April, 1883, and, being desirous of having an extension of his lease, opened negotiations with Borden, the owner of the property. These negotiations with Borden were known to his business manager, Davis, who was employed at $50 per week and ten per cent. of the net profits. Hamlin, being informed by Borden that there were two business managers competing for the new lease of the theater, suddenly conceived the idea that possibly Davis, his own manager, was one of the two, and questioned Davis upon the subject. He unqualifiedly denied that he had been, or ever had any intention of negotiating for the lease. The fact was that he had been for some time prior thereto negotiating with Borden for a lease of the property in question, and at the time of the conversation had agreed to take the lease, which was formally executed to him on the next day thereafter. While Davis knew of Hamlin's efforts to procure a lease, and advised him as his confidential manager in relation thereto, he was covertly and secretly taking advantage of the confidence reposed in him, and of the knowledge he had gained of the business while in Hamlin's employ, to overbid Hamlin, obtain the lease, and become master where he was then the servant. These are substantially the facts as adduced from the testimony on both sides, except that Davis insists that the denial that he was negotiating for the lease took place on the 17th of January last; and that, although he had been trying to get the lease, he had abandoned the effort,

and did not resume it until the 19th of January, in response to a note from Borden, written on the 18th, asking him to come and see him. The weight of the evidence is decidedly in favor of Hamlin's statement that the conversation took place on the 23d of January. Davis failed to produce Borden's note or to account for its non-production. I have no doubt but that at the time the conversation took place Davis was secretly and fraudulently endeavoring to undermine his employer, and told the falsehood to conceal his efforts. It is immaterial whether he told the falsehood on the 17th or the 23d of January, as the date did not affect the quality of the falsehood. Davis, having obtained the lease, informed Hamlin of the fact, who thereupon discharged him.

The complainant invokes a rule of law which forbids an agent, trustee or person occupying a fiduciary or *quasi* fiduciary position from gaining any personal advantage touching the thing or subject as to which such fiduciary position exists. The rule is better stated in the note to the leading cases upon this doctrine—*Keech* v. *Sanford*, "Leading Cases," "Equity, 62"—than I have found it elsewhere, as follows:

"Wherever one person is placed in such relation to another, by the act or consent of that other, * * that he becomes interested for him, or interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated."

The defendant insists that this rule is not applicable to this case, because Davis was not employed by Hamlin about the subject matter of the new lease; that it was no part of his duties as business manager to obtain a new lease of the theater. I cannot agree with defendant's counsel in this narrow limitation of this broad principle of equity founded upon good morals and public policy.

I do not deem it necessary that a confidential employee in a business, in order to come within the rule, should have any specific duty to perform in a matter which may affect that business. His duty need not necessarily be an active duty. It may be one of abstention only, or negative in its character. In this case it was clearly the duty of Davis to abstain from

doing anything which would interfere with his employer in his efforts to obtain an extension of his lease. It was his duty not to overbid his employer. · It was his duty not to place himself in a position where his duty as employee and his interest would come in conflict. It was his duty to inform his employer of all facts coming to his knowledge touching the releasing of the theater; but in place thereof he concealed from him and denied his own efforts to obtain the lease, thereby practically removing the competition of his employer. It is true Mr. Borden was under no covenant to renew or extend this lease to Hamlin, and that Hamlin had no legal interest in the property after April, 1883, when his then lease would expire. While there was no legal obligation on Borden to extend this lease to Hamlin, yet I cannot but think there was a moral obligation to make a new lease to Hamlin, who had, by years of labor and large expenditure of money, made the property valuable, rather than to a stranger. It may be said that there is a moral obligation upon every landlord to prefer the old tenant, who is prompt-paying and otherwise unobjectionable, and while a Court of equity cannot found rights upon mere moral obligations, nor make decrees regulating the morals of parties, yet I am of the opinion that this moral obligation of the landlord to renew the lease to an unobjectionable tenant may be counted upon by the tenant, and may create, and does create, a reasonable expectation that he, the tenant, will obtain a new lease, which reasonable expectation, if not property, strictly speaking, may be said to be partaking of the nature and quality of property.

This reasonable expectation of the tenant, founded, as I have said, upon the moral obligation of the landlord, enters into and forms a valuable part of the business carried on upon the leased premises. It is a part of the good will attached to the premises by reason of the business carried on by the tenant, and it is an interest in which, if a Court of equity will not protect tenant as against landlord, it will protect as against a confidential employee who, by reason of his position, has acquired a knowledge of the value of that interest, and attempts secretly and fraudulently to obtain the benefit thereof to himself.

The defendant Davis also comes within the rule of law that when one comes into an interest by the permission of another, or accepts an interest with another, an implied obligation arises to sustain the common interest into which he has been admitted. Equity vindicates this rule by declaring the party who attempts, in violation of this obligation, to obtain an advantage, to be a trustee for all parties in the interest. In this case, Davis was to have ten per cent. of the net profits of the business, and while this interest would not make him a partner, yet it was such an interest in the business as would prevent his acting for himself alone, in regard to that business.

If Davis had gone to Borden and offered Borden that he would use his confidential relation with Hamlin—his influence over Hamlin—to induce him to pay a much larger rental than he (Hamlin) was willing to pay, if he (Borden) would give him (Davis) ten per cent. of the rental value Hamlin should agree to pay, and Borden had accepted, and had thereby obtained a greater rental from Hamlin, could it be doubted for one moment but that a Court of equity would say to Davis, "You cannot in good morals hold that ten per cent. of the rental for your own use; it must be turned into the business of which you agreed to take ten per cent. of the net profits?" Would not any Court of conscience stamp the act as one of breach of confidence and treachery on the part of Davis towards Hamlin?

If such would be the nature of the act supposed, how can his conduct be defensible in the present case when receiving ten per cent. of the net profits he attempts to oust his employer from the entire business and appropriate all the profits to his own use?

A Court of equity demands the utmost fidelity and loyalty on the part of employees toward their employers, and employees abusing the confidence of and taking advantage of the position in which they are placed, will not be allowed to profit thereby. If he obtains an interest or an advantage by such conduct, he will be decreed to hold the same in trust for, and to convey the same to his employer. The law recognizes the fact that the business of the world cannot be carried on without confidential relations existing, and also that man is "unco" weak and little to be trusted, and therefore declares

the person occupying the fiduciary relation incapacitated, as against his employer, to obtain any interest or advantage by a breach of the trust relation, or, in the language of one of the judges, "The wise policy of the law has therefore put the sting of disability into the temptation, as a defensive weapon against the strength of the danger which lies in the situation."

I have had but little difficulty as to the right of Hamlin to relief as against Davis, but as to the other branch of this case, *i. e.*, as to the rights of the landlord, I have had much more difficulty. The defendant, Borden, is the owner of the property; had the *jus disponendi* of the property in question; had domain over it, and had a legal right to lease to whom he pleased. He now answers that he is unwilling that the lease be assigned to Hamlin, and insists upon a clause in the lease, wherein it is covenanted that the premises shall not be occupied by any one except the lessee, "nor shall they be underlet," and that the lease "shall not be, nor permitted to become, assigned, whether voluntarily or involuntarily, or by operation of law; and that no act or acts will be done or suffered whereby the same may be, or become assigned, in whole or in part, without the written consent of the lessor indorsed thereon shall be first obtained in each and every case of underletting, assignment and joint occupancy, as shall, from time to time, occur or be desired, and that nothing whatever shall be held to be a waiver of, or supersede, the necessity of such indorsement, and of the right to enforce the covenants, and each of them, in respect to such matters, or any of them, by forfeiture of the lease and the term hereby granted, or otherwise, for breach thereof."

In considering this provision of the lease, it should be remarked that the evidence shows that up to the time of its execution the defendant Borden was willing that the complainant should have the lease if they could agree on the terms; that negotiations between them were pending at the time of making of the lease to Davis; that the provision in question is part of a printed form, and not written or devised especially for this lease. Also, that complainant acquits Borden, by the allegations of his bill, of any combination or conspiracy with Davis, attributing his action to misapprehension as to the fact

that the negotiations between complainant and himself were still pending.

Courts of equity, it is well known, look with much disfavor upon clauses of this kind, commonly known by the expressive title of "cut-throat clauses," and if there is any known principle of law or any equity which may be applied to avert their operation, the Court will apply the same.

After a very careful consideration of the authorities cited, I am of the opinion that this bar set up by Borden to prevent the lash of a Court of morals being applied to the defendant, Davis, and constituting him a trustee for complainant, so that he, Davis, may not profit by his breach of trust, cannot prevail.

I am not positive, in the first place, that there should be necessarily decreed any assignment of the lease in question. It may be sufficient for complainant to have a decree constituting Davis a trustee for complainant, and that he be enjoined from interfering with complainant in the possession or control of the same during the term of said lease, and thereby there will probably be neither assignment of the lease by operation of law nor change of possession. The new lease becomes a graft upon the present lease. The Court might also enjoin Davis from assigning to any other person.

I am of the opinion, also, that an assignment of the lease to be decreed by a Court of equity, founded on matters connected with the execution of the lease, was not contemplated by the parties as being within the provision cited, and should not be held so to be by this Court. To construe the lease as allowing Borden the right to avoid the lease because Davis entered into the lease with him would appear to be opposed to the grant itself. The very act of execution of the lease by Davis and Borden gave rise to an equity, to a right, in Hamlin to have the benefit of the lease, and it appears to me that the claim in question must be held to apply to acts done and matters arising subsequent to the execution of the instrument. I am not prepared to say that a party may insert a "covenant in a lease to prevent its transfer by operation of law," in those words. He may insert a covenant that if a party commits an act of bankruptcy, goes into debt, and an execution is levied on the

household interest and the same sold, or that other acts of the like nature growing out of the acts of omission or commission or permission of the tenant shall cause a forfeiture, but that a covenant that the law shall not operate in any contingency upon the tenant's interest can be sustained as a reasonable provision or a legal one, I very much doubt. It will also be perceived that the case does not provide as a condition of the lease that the assignment, etc., shall work a forfeiture; but it is made a mere covenant that there shall be no assignment, and reserves to the landlord the right to enforce all the covenants of the lease by forfeiture or otherwise. It appears in evidence that Borden knew of Davis' confidential relation; knew that he was secretly plotting to supplant Hamlin in the running of the theater, and by executing the lease to him he assisted Davis in his attempt to commit a fraud on his employer.

A stranger to the lease having assisted in the perpetration of, or attempt to perpetrate, a fraud on Hamlin would not be allowed to profit by the fraud, nor would he be granted any relief by a Court of equity. I can see no reason why the rule is not applicable to the landlord under the circumstances of this case. In any event a Court of equity would say to him, " You have a remedy as to breach of covenant of non-assignment, by forfeiture, an action of covenant or otherwise, and you will not be permitted to interfere with the functions of a Court of justice in doing equity between Hamlin and Davis by declaring a forfeiture, but will be remitted to your action on the covenant or other remedies that you may have." It is argued by by the defendants that the Court may do complete justice between the parties by declaring this lease cancelled.

Borden has filed no cross-bill, and no person before the Court is asking such relief. The Court will not decree a relief not asked for.

Hamlin, under well-established principles of equity, has the right, if he desires, to stand in the shoes and reap all the advantages and hold all the interest which his faithless employee acquired by his breach of trust, and to cancel the lease would be to deprive him of that right.

It is probably unnecessary for the decree to provide that Borden shall have no right to declare a forfeiture by reason of

anything contained or done under the decree to be entered therein, as Borden has not declared his intention to declare a forfeiture; but if complainant desires such a prohibition or injunction in his decree he may insert one.

I might hesitate in the relief which I have indicated that Hamlin is entitled to, if the defendant, Borden, the owner of the property, had shown to the Court that there was any objection to Hamlin as a tenant, any good reason why he should not become his tenant, but he has shown none.

Hayden is not entitled to any consideration, as the evidence shows that he had full notice before he paid any money to Davis.

It may be remarked that prior to the trial of the case it was agreed by both parties that the case might be taken on appeal by consent to the present October term of the Appellate Court, thus enabling its being heard at the next March term of the Supreme Court. Otherwise it would go over till the March term of the Appellate Court, and not reach the Supreme Court before the September term, 1883, a year from now. No notice of appeal has as yet been given by Davis or his co-defendants.